UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-20716-Civ-WILLIAMS/TORRES

JON SALE, as Receiver for
MEDIA PAY LLC,

 Plaintiff,

v.

JUMBLEBERRY ENTERPRISES USA, LTD,
JUMBLEBERRY INTERACTIVE GROUP, LTD, and
JUMBLEBERRY PUBLISHING GROUP, LTD.

 Defendants.

_____/

### REPORT & RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Jumbleberry Enterprises USA, Ltd, Jumbleberry Interactive Group, Ltd, and Jumbleberry Publishing Group, Ltd's (collectively, "Jumbleberry" or "Defendants") motion to dismiss the complaint filed by Jon Sale ("Receiver or "Plaintiff"), as Receiver for Media Pay LLC ("Media Pay"), or in the alternative, motion for summary judgment. [D.E. 13]. Plaintiff responded to Defendants' motion on September 10, 2020 [D.E. 15] to which Defendants replied on September 17, 2020. [D.E. 17]. On January 27, 2021, the Honorable Kathleen M. Williams referred the motion to the Undersigned for a Report and Recommendation. [D.E. 29]. Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant

1

authority, and for the reasons discussed below, Defendants' motion to dismiss pursuant to Rule 12(b)(5) should be **GRANTED**.

## I. BACKGROUND

On August 23, 2018, the Securities Exchange Commission ("SEC") commenced an action in the United States District Court for the Southern District of Florida, *Securities and Exchange Commission v. 1 Global Capital LLC and Carl Ruderman*, Case No. 18-cv-61991-BB. In the case, the SEC alleges that Defendant 1 Global, while being overseen by Defendant Carl Ruderman ("Ruderman"), fraudulently raised more than $287 million from more than 3,400 investors through unregistered securities offerings to fund its business of offering short-term financing to businesses in violation of the Securities Exchange Act of 1934. Instead of paying investors or otherwise running the business as presented to the investors, Ruderman siphoned at least $35 million dollars to his personal coffers to fund his exorbitant lifestyle. After the Ponzi scheme started to crumble, 1 Global filed for bankruptcy in July 2018, which caused investors to lose approximately $250 million dollars.

Ruderman, however, still controlled solvent entities that had received funds from 1 Global, including Media Pay. To preserve the assets of Media Pay and the other entities, Plaintiff was appointed as Receiver by Judge Beth Bloom of this District on August 23, 2018. Receiver was ordered to take immediate possession of all property, assets and estates of every kind of Media Pay, to investigate the manner in which the affairs of Media Pay were conducted, and to institute such actions and

legal proceedings as Receiver deemed necessary against any transfers of money or other proceeds directly or indirectly traceable from investors in Media Pay. About a year later, Ruderman consented to a judgment against him.

Jumbleberry is an e-commerce business that purchases media for advertisers. It is based in Toronto, Ontario and organized under the laws of Canada. Ruderman caused Media Pay to transfer over $3 million dollars to Jumbleberry through numerous transfers. Approximately $647,000 of these funds were originally transferred by Ruderman from 1 Global to Media Pay. The last transfer from Media Pay to Jumbleberry that used the illicit funds occurred on September 22, 2015. While Jumbleberry received these funds from Media Pay, they did not have a contract. Jumbleberry instead had a contract with Prime Line Nutra, an online health and beauty products retailer controlled by Ruderman. According to the complaint, Jumbleberry thus received these payments not in exchange for any goods or services that benefited Media Pay or any of its creditors.

On February 19, 2020, Plaintiff initiated this four-count cause of action against Jumbleberry for fraudulent transfers under Florida statutory law (Counts I-III) and unjust enrichment (Count IV). [D.E. 1]. On May 11, 2020, Plaintiff moved for an extension of time to serve Defendants. [D.E. 7]. In the motion, Plaintiff asserted that it had been working diligently, through Canadian counsel and a Canadian process server, to attempt service of process on Jumbleberry in compliance with the Hague Convention. But, Jumbleberry's office had been closed by local executive orders due to COVID-19. The Court granted Plaintiff's request for a 90-day extension for good cause shown, making August 19, 2020 the deadline to effectuate

service, but ordered that all claims against Jumbleberry would be dismissed without prejudice if it was not served by the deadline pursuant to Federal Rule of Civil Procedure 4(m).   [D.E. 8].

Jumbleberry moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.   Jumbleberry also moves to dismiss, pursuant to Rule 12(b)(6), because it argues Plaintiff's claims are time barred by the applicable statutes of limitations.   In the alternative, if the Court considers extrinsic evidence, Jumbleberry moves for summary judgment in its favor under similar time-barred arguments.   [D.E. 13].

## II.   ANALYSIS

Defendants first argue that Plaintiff's complaint must be dismissed pursuant to Rule 12(b)(5) because they were not served properly under Rule 4 or the Hague Convention.   A defendant may seek dismissal for insufficient service of process. *Kammona v. Onteco Corp.*, 587 F. App'x 575, 578 (11th Cir. 2014).   When a defendant files a motion to dismiss under Rule 12(b)(5), the "plaintiff has the burden to demonstrate sufficient service of process by making a *prima facie* case of proper service."   *Hollander v. Wolf*, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009).

Rule 4 governs service of process.   When the party at issue is a foreign business entity, Rule 4(h)(2) directs that service of process is authorized in the same manner as that prescribed by Rule 4(f) for serving individuals outside the United States.   Rule 4(f) provides that such service may be made by means that include international agreements such as the Hague Convention or, under Rule 4(f)(3), "by other means not prohibited by international agreement, as the court orders."   Fed.

R. Civ. P. 4(f)(3). The three limitations in Rule 4(f)(3) are that: (1) service must be directed by the court, (2) it must not be prohibited by international agreement, and (3) due process requires that it must be "reasonably calculated" to give notice to a defendant. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The parties agree that the Hague Convention applies to this case because both the United states and Canada are signatories. *See Bodyup Fitness, LLC v. 2080039 Ontario, Inc.*, 2008 WL 516996, at *3 (S.D. Fla. Feb. 23, 2008); *In re Greater Ministries Int'l, Inc.*, 282 B.R. 496, 499 (Bankr. M.D. Fla. 2002). The primary method to accomplish service in Canada under the Hague Convention is to request the designated Central Authority in Canada to effect service through an appropriate official. *See* Hague Convention, Art. 2, 20 U.S.T. 361. However, the Central Authority "is not the sole or exclusive mode of service permitted under the Hague Convention; litigants of signatory nations are also allowed to undertake various alternative methods of service under certain circumstances." *Atwater v. Light Korean Presbyterian Church*, 424 B.R. 912, 917 (Bankr. M.D. Fla. 2010) (internal citations and quotations omitted). These alternative methods are permitted if they have not been objected to by the applicable state. *See 2080039 Ontario, Inc.*, 2008 WL 516996, at *3 (citing *DeJames v. Magnificence Carriers*, 654 F.2d 280, 288 (3d Cir. 1981)). Because Canada has not objected to the relevant Articles of the Hague Convention on service of process, Rule 16 of the Ontario Rules of Civil Procedure ("ORCP") also applies as Jumbleberry's principal place of business is located at 171 East Liberty Street, Suite 310, Toronto, Ontario M6K 3P6, Canada.

According to the Return of Service affidavits filed by Plaintiff on August 19, 2020, the Canadian process server attempted to serve Jumbleberry "personally at their office address on April 7, 2020 at 10:40 a.m., July 9, 2020 at 2:20 p.m., and August 5, 2020 at 1:10 p.m.," each time without success. [D.E. 12, Ex. A-C]. The Canadian process server then purported to serve Jumbleberry by "mailing a copy" of the summons and complaint to Jumbleberry's Toronto office address, "which is the address on record for the company with the Canadian Government[.]" *Id.* This mailing was sent on August 6, 2020. *Id.*

Plaintiff argues this method of service, mailing a copy to Jumbleberry at its address on record with the Canadian Government, complies with the Hague Convention and OCRP 16.03(6). OCRP 16.03(6) states:

> Where the head office, registered office or principal place of business of a corporation . . . **cannot be found** at the last address recorded with the Ministry of Consumer and Commercial Relations, service may be made on the corporation by mailing a copy of the document to the corporation or to the attorney for service in Ontario, as they case may be, at that address.

Ont. R. Civ. P. 16.03(6) (emphasis added).

The parties agree that this subsection provides an alternative to personal service upon a corporation and permits service by mail only when personal service has been attempted but the corporation *cannot be found*. They disagree on what "cannot be found" means, however. Jumbleberry argues that having its office closed as of August 5, 2020 due to the COVID-19 pandemic does not mean Plaintiff did not find the office, so the alternative of mailing does not apply. In response, Plaintiff argues the mailing was allowed under OCPR 16.03(6) because Jumbleberry's office

6

had its doors locked, had no staff or employees present, and had been closed indefinitely throughout the time Plaintiff attempted service. This is inconsequential, however, because OCPR 16.03 says nothing about an office being closed indefinitely. And the sole case cited by Plaintiff that touches on OCPR 16.03 does not support Plaintiff's proposition that a business being closed equals "cannot be found." *See Aquawood LLC v. Wide Eyes Mktg. Ltd.*, 2011 WL 13220333, at *6 (C.D. Cal. Oct. 31, 2011) (finding service by regular Canadian mail proper because the defendant, the head of an office, could not be found at either of the business's addresses). And there is no evidence that Jumbleberry was closed indefinitely. Plaintiff notes in its Return of Service affidavit, that Toronto permitted many businesses to reopen on July 31, 2020, but he only attempted service under OCPR 16.03(6) one time shortly after this.

Regardless, Plaintiff argues that if the Court was to determine alternative service was not proper here, this would lead to the untenable position that a corporation may evade actual and alternative service of process by simply shutting down its principal place of business. This argument is a red herring. Plaintiff still has other alternate methods to effectuate service such as service of process through the Central Authority in Canada pursuant to the Hague Convention. Plaintiff asserts that this method was not possible as the Court only granted a 90-day extension to effectuate service, and Plaintiff was advised that service of process through the Central Authority in Canada would take approximately four to six months. Plaintiff made no mention of the Central Authority and how long service

7

would take using it in its motion for extension and only requested a 90-day extension. Plaintiff cannot now blame the Court for its own failed tactical decision.

Besides showing that using the Central Authority may take a long time to effectuate service, Plaintiff has made no showing that service under the Hague Convention is unduly burdensome or futile.[1]  *Cf. International Designs Corp., LLC v. Qingdao SeaForest Hair Prod. Co.*, 2018 WL 2364297, at *2-3 (S.D. Fla. Jan. 4, 2018) (noting that courts have been "reluctant to use their discretion to authorize alternate service when Hague Convention service is available" and have only permitted "such alternate service only where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternate service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed."); *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 5501141, at *5 (S.D. Fla. Sept. 11, 2020) (denying motion for alternative service because "this is not a case where Plaintiffs have made prior, unsuccessful attempts to serve the well-known, corporate Defendants in their respective countries.").

---

[1] The 1993 Advisory Committee Notes to Rule 4 states:

> The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months.  Generally, a Central Authority can be expected to respond much more quickly than that limit might permit, but there have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons.  In such cases, resort may be had to the provision set forth in subdivision (f)(3).

Plaintiff last argues that Jumbleberry was properly served because it received actual service of process. Particularly, Jumbleberry admits that its staff members regularly enter the office and retrieve any mail that has been delivered. And while Jumbleberry never signed for a delivery of the summons or complaint via Canada Post registered mail, stapled copies of such documents were left in the Jumbleberry's office mail drop. Plaintiff thus argues this satisfies OCRP 16.08(a), which permits a court to enter an order validating service if a copy of the document to be served actually came to the notice of the person to be served or; the document was served in such a manner that it would have come to the notice of the person to be served, except for the person's own attempts to evade service. In other words, Plaintiff wishes to sidestep the Hague Convention and have the Court use its discretion under OCRP 16.08(a) to order that service was proper because Jumbleberry has actual notice of the suit.

We find the case *In re Greater Ministries Int'l, Inc.* instructive here. In this case, each time service was attempted under OCPR 16, the concierge of a condominium complex refused to allow the servicer inside. Instead of personally serving the defendant, the servicer left the summons package with the condominium concierge, who indicated that it would be delivered to the defendant, and copies of the summonses were mailed to the defendant's home. *See In re Greater Ministries Int'l, Inc.*, 282 B.R. at 498-99 (granting motion to quash improper service). Drawing from Canadian case law, the court declined to use the actual service provision under OCRP 16.08(a) to order that service was proper because there was no evidence the defendant evaded service of process or that proper service was impracticable. *See id.* at 501-02

9

("[Defendant] and potential future defendants have a Canadian statutory right to receive service of process if they have not forgone that right by evading service, especially when service may be reasonably carried out.") (citing *In re Consiglio*, 3 O.R. 798, 1971 WL 114263 (Sup. Ct. Ont. 1971); *(King v. Kokot*, 31 O.R.2d 461, 1980 WL 256478 (Ont. Sup. Ct. High Ct. Justice 1980).

Like *Greater Ministries*, there are no claims that Jumbleberry has evaded service nor are there special circumstances that warrant the Court circumventing proper service and ordering that actual service was proper here. For example, Plaintiff has made no showing that proper service would otherwise lead to considerable expense, that there is a sense of urgency, or that Jumbleberry's office will never open again. To the contrary, employees of Jumbleberry are obviously still going to the office to at least pick up mail. And somewhat frequently as Jumbleberry filed this motion within 21 days after it the summons and complaint were delivered by mail. And as noted by Plaintiff, Toronto permitted many businesses to reopen on July 31, 2020. *Cf. In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 8809362, at *7 (S.D. Fla. Mar. 24, 2017), *report and recommendation adopted*, 2017 WL 8809106 (S.D. Fla. Apr. 27, 2017) (alternate service granted after plaintiffs had attempted Hague Convention service for more than six months while spending more than $25,000).

The Court therefore does not exercise its discretion under OCRP 16.08(a) to order that actual service was proper. *See In re Greater Ministries Int'l, Inc.*, 282 B.R. at 502 ("If service were to be validated here, this Court would also be ignoring legislative intent. If the government of Canada wished that notice of a proceeding

10

was effective simply upon the knowledge of a potential defendant, then why have they not said just that, rather than enacting the numerous service methods which currently exist specifically to determine the success or failure of attempted service."); *cf. De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750-51 (11th Cir. 2016) ("The magistrate judge's reliance, in later finding that service had been effected on September 21, 2013, on evidence showing that Althawadi, Tamaz's registered agent, had actual notice of the lawsuit was misplaced, since notice does not confer personal jurisdiction on a defendant when it has not been served in accordance with Rule 4.") (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant . . . There also must be . . . authorization for service of summons on the defendant.").

Because Plaintiff failed to effectuate service by August 19, 2020 in violation of the Court's May 19, 2020 Order [D.E. 8], Defendants' motion to dismiss pursuant to Rule 12(b)(5) should be **GRANTED without prejudice**.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss pursuant to Rule 12(b)(5) [D.E. 13] be **GRANTED without prejudice**.[2]

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have

---

[2]    The Court expressly does not reach the merits on Defendants' other arguments regarding the applicable statutes of limitations.

11

fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 19th day of February, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge